*In re* ESTATE OF CORNELIUS C. BARTLETT, Deceased (Beverly Ann Bartlett, Claimant-Appellee, v. Illinois National Bank of Springfield *et al.*, Co-Ex'rs of the Estate of Cornelius C. Bartlett, Respondents-Appellants).

Fourth District No. 4—85—0148

Opinion filed November 5, 1985.

Robert T. Hall, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellants.

Anthony J. Manuele, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On November 30, 1977, the trial court entered an order dissolving the marriage of Beverly Ann Bartlett, the claimant, and Cornelius Bartlett. Pursuant to a settlement agreement, the trial court ordered Cornelius Bartlett to pay the claimant the sum of $500 per month "as maintenance" for a period of 10 years. Cornelius Bartlett made the

monthly payments until his death on March 6, 1982. The claimant filed a claim against his estate for $34,000, the money still due under the settlement agreement. The executors of the estate denied the claim. After both parties filed motions for summary judgment, the trial court granted the claimant's motion and awarded her $34,000. The issue on appeal is whether Cornelius Bartlett's obligation under the settlement agreement and dissolution of marriage decree terminated with his death. Paragraph C of the dissolution of marriage decree, which incorporated the settlement agreement, provided:

> "CORNELIUS C. BARTLETT shall pay to BEVERLY ANN BARTLETT the sum of Five Hundred and 00/100 dollars ($500.00) per month as maintenance commencing on the 15th day of November, 1977 and to be paid on the 15th day of each month thereafter for a period of ten (10) years."

The claimant contends the parties intended this award to be nonmodifiable. The executors maintain the obligation terminated with the death of Cornelius Bartlett under section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1983, ch. 40, par. 510(b)).

Section 510(b) originally provided:

> "The obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." (Ill. Rev. Stat. 1979, ch. 40, par. 510(b).)

In 1982, section 510(b) was amended to read:

> "*Unless otherwise agreed by the parties in a written separation agreement set forth in the judgment or otherwise approved by the court,* the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance * * *." (Additions indicated by italics.) (Ill. Rev. Stat. 1983, ch. 40, par. 510(b).)

Under the Act as originally adopted, some courts held the termination provisions were mandatory and could not be avoided by the parties to a settlement agreement. (See, *e.g., In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 441 N.E.2d 1221: *In re Marriage of Lowe* (1981), 101 Ill. App. 3d 317, 427 N.E.2d 1367.) The supreme court rejected this interpretation and held the 1982 amendment did not change the prior law but merely clarified it. *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719.

The issue is whether the parties agreed not to have the obligation to pay maintenance terminate upon the death of either party.

The resolution of this issue depends upon the construction given to the settlement agreement and the dissolution decree. In interpreting the settlement agreement, ordinary rules of contract construction apply. The primary purpose of construction is to ascertain, and where possible, give effect to the intent of the parties. This intent must be determined from the language of the instrument itself unless the instrument is incomplete or the language is ambiguous. An ambiguity exists where the words are susceptible of being interpreted in more than one sense. Whether the agreement is ambiguous is a question of law. (*In re Marriage of Marquardt* (1982), 110 Ill. App. 3d 271, 273-74, 442 N.E.2d 267, 269.) When the language is ambiguous, parol evidence may be admitted to determine the intent of the parties. *In re Marriage of Workman* (1980), 89 Ill. App. 3d 886, 412 N.E.2d 614.

We note the parties entered into this agreement shortly after the Act became effective. Under prior law, awards for spousal support were termed "alimony." The distinguishing characteristic of alimony was that it was payable in an indefinite amount for an indefinite period of time. An obligation to pay alimony terminated with the death of either party. Prior law also provided for an award of "alimony in gross," which was an award of a sum certain, often payable in installments. (*In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 431 N.E.2d 1.) Courts refused to relieve a party to a settlement agreement of the obligation to pay alimony in gross in the absence of fraud or want of jurisdiction in the trial court:

> "In modern society divorce has become a luxury, but the bargained for purchase price must nevertheless be paid when it is sanctioned by court approval and entered of record in the divorce decree. Here defendant agreed to forego receiving periodic alimony for an indefinite period of time and agreed to a certain lump sum settlement paid in installments. It is the policy of the courts to enforce property settlement agreements between the parties." (*Koivun v. Koivun* (1977), 45 Ill. App. 3d 39, 42, 359 N.E.2d 215, 217.)

Thus, under the prior law, the decedent's obligation would not have terminated with his death.

The executors note the Act expressly allows maintenance for a limited time and sum. (Ill. Rev. Stat. 1983, ch. 40, par. 504(b).) They also note the Act did not expressly provide for awards of maintenance in gross before 1982. (See Ill. Rev. Stat. 1979, ch. 40, par. 504(b).) The issue, however, is not whether the parties agreed to provide for maintenance or maintenance in gross, but whether they intended to have the termination provisions of section 510(b) apply. We

think they clearly did not. Section 510(b) provides termination dates unless the parties agree otherwise. In this case, the parties set their own termination date. The executors contend the maintenance provision was modifiable or terminable at any time but would definitely terminate 10 years from the date of dissolution. Such an interpretation would have the 10-year limitation work solely to the claimant's detriment. We believe the claimant agreed to forego the possibility of receiving maintenance for longer than 10 years in exchange for an assurance that the maintenance payments would not cease prior to that time. The maintenance provision for a fixed determinable sum was an integral part of the settlement agreement. The settlement agreement was voluntary in its inception without court intervention, entered into freely and found not to be unconscionable by the court. The construction which will be most equitable to both parties rather than that which gives one party an unfair advantage is favored. *Board of Education v. Chicago Teachers Union* (1980), 89 Ill. App. 3d 861, 412 N.E.2d 587, *rev'd on other grounds* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111.

For these reasons, the order of the trial court is affirmed.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.